FILED
2012 JUN 12 PM 3:46
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2012 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. G & A CHECK CASHING, KAREN GASPARIAN, and HUMBERTO SANCHEZ, Defendants. | CR No. CR12-0560 |
| | I N D I C T M E N T |
| | [18 U.S.C. § 371: Conspiracy; 31 U.S.C. §§ 5324(a)(1), (d)(2): Causing a Financial Institution to Fail to File a Currency Transaction Report; 31 U.S.C. §§ 5318(h), 5322: Failure to Maintain an Effective Anti-Money Laundering Program; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 31 U.S.C. § 5317(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At all times material to this Indictment:

A. THE BANK SECRECY ACT

1. The Bank Secrecy Act ("BSA"), codified at Title 31, United States Code, Sections 5313-5326, was a set of laws and

regulations enacted by Congress to address an increase in criminal money laundering through financial institutions.

2. Check cashers qualified as financial institutions within the meaning of the BSA. A check casher was someone engaged in the business of cashing checks for other people in amounts greater than $1,000 in currency (such as cash) or other monetary instruments, for any person, on any day, in one or more transactions. A check casher would typically charge a fee for this service. Check cashers enabled people to cash checks without having to go to a bank or otherwise have a bank account.

3. One of the BSA mechanisms to uncover criminal activity conducted through financial institutions was a requirement that check cashers and other financial institutions file a "Currency Transaction Report" ("CTR"), FinCEN Form 104, with the Department of the Treasury, for any transaction involving more than $10,000 in currency.

4. Title 31, United States Code, Section 5313(a) and related regulations, including Title 31, Code of Federal Regulations ("C.F.R."), Section 103.22(c), required that financial institutions such as check-cashers treat multiple currency transactions as a single transaction and file a CTR if the financial institution had knowledge that the multiple transactions were by or on behalf of any person and resulted in either cash in or cash out totaling more than $10,000 during any one business day.

5. A CTR consisted of three parts. Part I required the financial institution to verify and accurately record the name and address of the individual who conducted a reportable currency

transaction, as well as to accurately record the identity, social security number, or taxpayer identification number of any person or entity on whose behalf the currency transaction was conducted. Part II required the financial institution to record the date, the amount of the transaction, and the form of the transaction. Part III required the name of the financial institution where the transaction occurred, the person completing the CTR, and the person approving the completion and filing of the CTR.

6. CTRs were filed with the Financial Crimes Enforcement Network ("FinCEN"), a bureau of the Department of the Treasury.

7. In addition, the BSA required check cashers to develop, implement, and maintain an effective anti-money laundering program reasonably designed to prevent the check casher from being used to facilitate money laundering. Title 31, C.F.R. § 1022.210, eff. Mar. 1, 2011, formerly Title 31, C.F.R. § 103.125. The program was required to have written policies, procedures and controls governing the verification of customer identification, the filing of reports such as CTRs, the creation and retention of records, responses to law enforcement requests, and other compliance with BSA requirements. As part of the program, the check casher was required to have a compliance officer, who was responsible for assuring that the business complied with all BSA requirements.

8. Despite these regulations, check cashers were still a common venue for individuals who wanted to cash large numbers of checks anonymously to facilitate fraud and money laundering schemes, particularly in the area of health care fraud. Individuals engaged in such conduct commonly converted the

proceeds of their fraud into cash by presenting checks to check cashers who they knew would not ask for proof of the payee's identity and would either file CTRs with false information or not file CTRs at all.

B. THE DEFENDANTS

9. Defendant G&A CHECK CASHING ("G&A") was a check cashing business incorporated in the State of California, with its principal place of business at 2901 Beverly Blvd., Los Angeles, California 90057-1011, within the Central District of California. Defendant G&A was registered with FinCEN as a money service business and was a "financial institution," as that term is defined in Title 31, United States Code, Section 5312(a)(2)(k) and accompanying regulations. As a result, defendant G&A was subject to the CTR reporting requirements of the BSA.

10. Defendant KAREN GASPARIAN ("GASPARIAN") was the general manager of defendant G&A. As the general manager, defendant GASPARIAN oversaw the day-to-day operations of defendant G&A, such as supervising the front desk employees, approving transactions, and withdrawing currency from defendant G&A's bank accounts for operational purposes, and negotiating customer's checks for currency.

11. Defendant HUMBERTO SANCHEZ ("SANCHEZ") was an employee of defendant G&A from in or about 2000 through in or about 2012. Beginning at least as early as in or about 2006, and continuing through in or about 2012, defendant SANCHEZ was defendant G&A's designated compliance officer for BSA purposes. Defendant SANCHEZ worked the front window at defendant G&A servicing customers. As the designated compliance officer, defendant

SANCHEZ, along with defendant GASPARIAN, was responsible for, among other things, assuring the proper filing of CTRs.

COUNT ONE

[18 U.S.C § 371]

12. The Grand Jury hereby repeats and realleges paragraphs 1 through 11 of this Indictment, as though fully set forth herein.

A. THE OBJECT OF THE CONSPIRACY

13. Beginning in or about 2006, and continuing up to and including in or about March 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendants G&A, GASPARIAN, and SANCHEZ, together with others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit the following offense against the United States: knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and regulations prescribed thereunder, causing and attempting to cause defendant G&A, a domestic financial institution, to fail to file a report required under Section 5313(a) of Title 31, specifically, a Currency Transaction Report - FinCEN Form 104, in violation of Title 31, United States Code, Sections 5324(a)(1) and (d)(2).

B. THE MANNER AND MEANS OF THE CONSPIRACY

14. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a. From at least in or about July 2006, through in or about March 2012, defendant G&A would engage in a pattern of cashing bundles of checks from a single payor that together exceeded $10,000, without filing a CTR. In this vein, between in or about July 2006, and in or about March 2012, defendant G&A

conducted approximately 800 transactions involving checks that were bundled in this fashion and paid out over $20 million cash on such transactions. Defendant G&A filed no CTRs on these transactions. The bundled checks were most often written on the accounts of payors that appeared to be health care businesses, such as physician practices, medical clinics, medical supply companies, and diagnostic test facilities. The checks themselves were written out to a variety of payees consisting of individuals and companies.

   b. Defendant GASPARIAN or defendant SANCHEZ would receive bundles of checks and cause them to be deposited into defendant G&A's operating accounts over several days, thus inhibiting the bank's ability to detect the fact that the checks had been presented as a group by a single individual on behalf of the payor rather than by the multiple, different payees on the checks.

   c. After the checks would clear, defendant GASPARIAN would provide and cause to be provided, at one time, cash in excess of $10,000 to the payor representative.

   d. Defendants GASPARIAN and SANCHEZ would not file CTRs on these transactions or cause anyone else to do so, even though they were well aware that the bundled check transactions were by or on behalf of a single person and would result in cash transactions totaling more than $10,000 during one business day.

   e. In exchange for this service, defendant G&A would charge a fee of approximately 3%-5% of the total transaction amount.

C. OVERT ACTS

15. In furtherance of the conspiracy, and to accomplish its object, defendants G&A, GASPARIAN, and SANCHEZ, together with others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California, and elsewhere:

Overt Act No. 1: On or about February 11, 2009, an Intermediary acting on behalf of defendant GASPARIAN received multiple checks totaling $15,000 from a cooperating witness acting on behalf of law enforcement ("CW1"), drawn on an account in the name of a fictitious medical company ("Company A"), without obtaining any identifying information from CW1.

Overt Act No. 2: On or about February 23, 2009, defendant GASPARIAN met with the Intermediary at defendant G&A.

Overt Act No. 3: On or about February 23, 2009, the Intermediary gave CW1 $13,800 in cash, representing the proceeds of the Company A checks, less a fee of approximately 8%, which included a fee of 3% for the Intermediary and a fee of 5% for defendant G&A for cashing the checks.

Overt Act No. 4: On or about December 7, 2009, defendant GASPARIAN received multiple checks totaling $12,903 from CW1, drawn on an account in the name of Company A, without obtaining any identifying information from CW1.

Overt Act No. 5: On or about December 15, 2009, defendant GASPARIAN gave CW1 $12,256 in cash representing the proceeds of the checks, less a fee of approximately 5% for cashing the checks.

Overt Act No. 6: On or about March 9, 2011, defendant

GASPARIAN received from a second cooperating witness acting on behalf of law enforcement ("CW2") multiple checks totaling $12,000, drawn on an account in the name of a different fictitious medical company ("Company B"), without obtaining any identifying information from CW2.

Overt Act No. 7: On or about March 9, 2011, defendant GASPARIAN instructed CW2 to sign the back of the checks with different signatures (for the different payees) and provided CW2 with different colored pens for this purpose.

Overt Act No. 8: On or about March 16, 2011, defendant GASPARIAN gave CW2 $11,640 in cash, representing the proceeds of the checks, less a fee of approximately 3% for cashing the checks.

Overt Act No. 9: On or about February 24, 2012, defendant SANCHEZ received from CW2 multiple checks totaling $12,000, drawn on an account in the name of Company B, without obtaining any identifying information from CW2.

Overt Act No. 10: In or about March 6, 2012, defendant GASPARIAN gave CW2 $11,640 in cash, representing the proceeds of the checks, less a fee of approximately 3% for cashing the checks.

COUNTS TWO THROUGH SEVEN

[31 U.S.C. §§ 5324(a)(1), (d)(2); 18 U.S.C. § 2]

16. The Grand Jury hereby repeats and realleges paragraphs 1 through 11, and 14 through 15, of this Indictment, as though fully set forth herein.

17. On or about the dates set forth below, within the Central District of California, and elsewhere, defendant GASPARIAN, knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations promulgated thereunder, caused and attempt to cause G&A, a domestic financial institution, to fail to file a report required under Title 31, United States Code, Section 5313(a), specifically, a Currency Transaction Report - FinCEN Form 104, and did so while violating another law of the United States, namely, Title 31, United States Code, Sections 5318(h) and 5322, and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period:

| COUNT | APPROXIMATE TRANSACTION DATE | CHECK NUMBERS | CASH TOTAL |
|---|---|---|---|
| 2 | 02/23/09 | 1334, 1335, 1336 | $13,800 |
| 3 | 03/13/09 | 1463, 1464, 1465 | $12,000 |
| 4 | 03/31/09 | 1304, 1305, 1306 | $11,000 |
| 5 | 05/04/09 | 1307, 1308, 1309 | $10,999 |
| 6 | 12/15/2009 | 1394, 1395, 1396 | $12,247 |
| 7 | 3/16/2011 | 1046, 1047, 1048, 1055 | $11,640 |

COUNTS EIGHT THROUGH ELEVEN

[31 U.S.C. §§ 5324(a)(1), (d)(2); 18 U.S.C. § 2]

18. The Grand Jury hereby repeats and realleges paragraphs 1 through 11, and 14 through 15, of this Indictment, as though fully set forth herein.

19. On or about the dates set forth below, within the Central District of California, and elsewhere, defendants GASPARIAN and SANCHEZ, knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations promulgated thereunder, caused and attempt to cause G&A, a domestic financial institution, to fail to file a report required under Title 31, United States Code, Section 5313(a), specifically, a Currency Transaction Report - FinCEN Form 104, and did so while violating another law of the United States, namely, Title 31, United States Code, Sections 5318(h) and 5322, and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period:

| COUNT | APPROXIMATE TRANSACTION DATE | CHECK NUMBERS | CASH TOTAL |
|---|---|---|---|
| 8 | 04/25/2011 | 1056, 1057, 1118, 1119, 1120 | $14,550 |
| 9 | 06/03/2011 | 1059, 1067, 1058, 1060 | $11,740 |
| 10 | 07/12/2011 | 1103, 1104, 1105, 1109 | $11,640 |
| 11 | 03/06/2012 | 1116, 1130, 1131, 1132 | $11,640 |

COUNT TWELVE

[31 U.S.C. §§ 5318(h) and 5322; 18 U.S.C. § 2]

20. The Grand Jury hereby repeats and realleges paragraphs 1 through 11, and 14 through 15, of this Indictment, as though fully set forth herein.

21. From in or about February 2009, and continuing until in or about March 2012, in the Central District of California and elsewhere, defendants G&A, GASPARIAN, and SANCHEZ did willfully violate the Bank Secrecy Act, Title 31, United States Code, Sections 5318(h)(2) and 5322, and regulations issued thereunder, specifically, Title 31, Code of Federal Regulations, Section 1022.210(a) (formerly Section 103.125(a)), by failing to develop, implement, and maintain an effective anti-money laundering program at G&A, a domestic financial institution and money services business,

22. Specifically, defendants G&A, GASPARIAN, and SANCHEZ knowingly and willfully failed to implement and maintain effective policies, procedures, and internal controls for defendant G&A for (1) verifying customer identification, in particular as to customers receiving in excess of $10,000 in currency in a single day as required by the BSA; and (2) filing CTRs for currency transactions in excess of $10,000, conducted by or on behalf of the same person on the same day.

23. Defendants G&A, GASPARIAN, and SANCHEZ took actions designed to prevent the implementation and maintenance of an effective anti-money laundering program, in that they:

i. failed to file currency transaction reports as required for currency transactions exceeding $10,000 that were

conducted by or on behalf of the same person on the same day;

ii. instructed CW2 on methods for avoiding detection of the fact that CW2 was cashing over $10,000 in checks in a single day, such as signing the checks with different signatures and in different colored inks;

iii. cashed checks made out to fictitious payees without requiring any identification documents regarding the payees; and

iv. delivered the cash to the ostensible payor on the checks rather than the purported payees.

FORFEITURE ALLEGATION

[31 U.S.C. § 5317(c)]

1. The Grand Jury incorporates and realleges all of the allegations contained in the Introductory Allegations and Counts One through Eleven of this Indictment above as though fully set forth in their entirety herein for the purpose of alleging forfeiture pursuant to the provisions of Title 31, United States Code, Section 5317(c).

2. Defendants G&A, SANCHEZ, and GASPARIAN, if convicted of any of the offenses in which they are charged under Counts One through Eleven of this Indictment, or a conspiracy to commit such offense, shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property involved in the offense committed in violation of Title 31, United States Code, Section 5324(a)(1), and the conspiracy to violate Title 31, United States Code, Section 5313(a), for which each defendant is convicted, and all property traceable to such property, including the following:

(1) all money or other property that was the subject of each transaction conducted in violation of Title 31, United States Code, Section 5324(a)(1), or involved in a conspiracy to violate Title 31, United States Code, Section 5313(a);

(2) all property traceable to money or property described in this paragraph 2.a.(1).

b. A sum of money equal to the total amount of money involved in the offense committed in violation of Title 31,

United States Code, Section 5324(a)(1), or the conspiracy to violate Title 31, United States Code, Section 5313(a), for which each defendant is convicted, or for which defendants G&A, GASPARIAN, and SANCHEZ may be held jointly and severally liable.

3. If, as a result of any act or omission by defendants G&A, SANCHEZ, or GASPARIAN, any of the foregoing money or property (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be subdivided without difficulty, then any other property or interests of defendants G&A, SANCHEZ, and GASPARIAN, up to the value of the money and property described in the preceding

///

///

paragraph of this Indictment, shall be subject to forfeiture to the United States.

A TRUE BILL

/S/

Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Fraud Section

CONSUELO S. WOODHEAD
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DAVID KIRMAN
Assistant United States Attorney
Major Frauds Section

JENNIFER SHASKY CALVERY
Chief, Asset Forfeiture and Money Laundering Section
U.S. Department of Justice

MATTHEW S. HASLINGER
Trial Attorney

MATTHEW KLECKA
Trial Attorney